## SIMS *et al. vs.* GOODWYN *et al.*

Where a Judgment at Law is had in an action of Trover, for negroes, by one who has not the true title, and afterwards administration is taken upon the estate of a deceased person in whom is the true title, and both the plaintiff and defendant, in first suit, are—without the subject of the suit—unable to respond to a recovery, a Court in Equity, upon the application of the administrator of the true owner of the property, will enjoin both plaintiff and defendant, in the Trover suit, from the settlement and enforcement of the Judgment—not only for the protection of the property from loss, but to protect the defendant in the first suit from two separate demands for the same subject.

In Equity, in Coweta Superior Court. Decision by Judge BULL, at chambers on the 28th of September, 1859.

John M. Sims, as the temporary administrator of Burwell Goodwyn, deceased, prepared and verified his bill in equity in due form, in which he alleged the facts following, to wit:

That, some time in the year 1835 Burwell Goodwyn died intestate, in the county of Brunswick and State of Virginia; that, at the time of his death, and for several years previous to that time, the said Burwell Goodwyn was seized and possessed, as of his own just right and property, of three negro slaves, to wit: Winney, a woman of dark complexion, Caroline, a woman of yellow complexion, and Harriet, a woman of yellow complexion; that said Winney had given birth to Ned, a boy of dark complexion, Julia, a girl, and Anthony, a boy; that said Caroline had given birth to a girl-child, named Martha, of yellow complexion, and that said Harriet

had given birth to a boy-child by the name of Joe, and one by the name of Albert, and a girl by the name of Catharine, and one by the name of Caroline, and three infant children whose names were unknown to the complainant; that, at the time of drafting said bill, Winney was about fifty-five years old—the first-named Caroline was dead—Harriet was about thirty years old—Ned was about twenty years old—Julia was about eighteen years old—Anthony was about twelve years old—the second-named Caroline was about three years old—Martha was about twelve years old—Joe was about eleven years old—Albert was about eight years old—Catharine was about six years old, and the ages of the said three infant children unknown to the complainant; that said negro slaves were of the aggregate value of eight thousand four hundred dollars, and of the aggregate annual value for hire of four hundred and thirty-one dollars; that said Burwell Goodwyn, at the time of his death, was considerably in debt, and no administration was ever taken out on his estate, for the reason that the distributees and heirs at law of said estate were willing that Mrs. Nancy Goodwyn, the widow of said deceased, should keep the possession of said negroes, and use and control the same for the purpose of raising, maintaining and educating the children of the said Burwell Goodwyn, deceased; that the said negroes first mentioned, and their subsequent increase, were and have been kept, used and controlled by the said Nancy Goodwyn from the death of said deceased up to the time of drafting said bill, for the purpose of raising and educating the children of deceased, as aforesaid, and that the said negroes were then hired out by the said Nancy Goodwyn to various persons in said county of Coweta, and constituted nearly all the means of support for her in her old age—being then an aged lady; that, in the year of 1849, Napoleon B. Goodwyn commenced his action of trover, in Coweta Superior Court, against the said Nancy Goodwyn, for all of said negroes then in existence, and, by an amendment of his writ, had included all of their subsequent increase, except the infant child of Harriet; that said action of trover had been litigated with varied success up to the March term, 1859, of said Court, when the said Napoleon B. Goodwyn obtained a verdict for the sum of eight thousand dollars damage, to be discharged by the delivery in twenty days of all of said negroes, except

Sims et al. vs. Goodwyn et al.

Caroline, who was then dead, and the infant child of Harriet, born since, and also for the sum of two thousand dollars, for the hire of said negroes; that said Nancy Goodwyn sued out a writ of error to the Supreme Court of said State of Georgia, giving bond and security, in order to supersede the execution of the judgment signed up on said verdict, and that, on the hearing of the case carried up by said writ of error, the said judgment was affirmed by the said Supreme Court; that a motion was then pending, and would be pressed, to make the said judgment of the Supreme Court the judgment of the said Superior Court; that, if said motion was pressed and granted, the said Nancy Goodwyn would, unless restrained, turn over to said Napoleon B. Goodwyn all of said negroes in discharge of said verdict, and also pay off said verdict and judgment for hire; that, notwithstanding said verdict, said negroes were then, at the time of drafting said bill, the just right and property of the estate of said deceased; that complainant can not, within the time allowed by said verdict for the delivery of said negroes, obtain permanent letters of administration on the estate of said deceased, so as to prosecute the rights and protect the interests of said estate; that, if said negroes should be delivered over to the said Napoleon B. Goodwyn, he had threatened to and would run them off, and remove himself out of the limits of the State of Georgia, and beyond the jurisdiction of her Courts, before the complainant could, according to law, obtain permanent letters of administration so as to prevent the same by an action at law; that said Napoleon B. Goodwyn is wholly and entirely insolvent, and much in debt, and there are judgments whose liens would attach upon said negro slaves and thus involve said estate in trouble and expense, and make it more difficult to obtain the right thereof, relative to said property; that the complainant applied for and duly obtained temporary letters of administration on said estate on the 12th of September, 1859, which were exhibited to said bill.

The complainant sought, by the prayer of said bill, a discovery of the facts charged from the said Nancy Goodwyn and Napoleon B. Goodwyn; also, that the said Napoleon B. Goodwyn be enjoined from enforcing said verdict and judgment; also, that all of said negroes be, by a decree of the Court, delivered up to such permanent administrator of said

estate as may be appointed, and that two thousand dollars hire, and the hire subsequently accruing, be likewise, by a decree of the Court, paid to such permanent administrator; and, also, for general relief.

This bill was presented to Judge BULL, of the Coweta Circuit (Judge Hammond being at the time absent from the said Tallapoosa Circuit) for his sanction and a fiat for the injunction prayed for in the bill.

Judge Bull withheld his sanction and refused the injunction, and that ruling is the error complained of in this case.

POWELL, SIMS & B. H. HILL, for the plaintiff in error.

BUCHANAN, for the defendants in error.

*By the Court.*—LYON, J., delivering the opinion.

Napoleon B. Goodwyn, one of the defendants, commenced an action of trover, in Coweta Superior Court, against Nancy Goodwyn, the other defendant and his mother, for the recovery of certain negroes, and after much litigation, succeeded in recovering judgment against her for the value of said negroes and their hire, amounting, in the aggregate, to the sum of ten thousand dollars, eight thousand of which could be discharged by the delivery of the negroes.

By reference to the report of that case in 20 *Geo.* 420, and 29 *Geo.* 225, where all the facts and grounds of that recovery are represented at large, it will be seen that the title of Napoleon B. rested on the following facts: The negroes, or those from which these now in controversy sprung, were levied and sold at sheriff's sale, in the State of Virginia, on the 6th of May, 1829, as the property of Burwell P. Goodwyn, the husband of one and father of the other of defendants, when they were bid off by one Oliver, for the defendant in execution, Burwell P. Goodwyn, who paid the price at which they were sold at that sale. The possession of the negroes were unchanged, but, for some purpose, a title for the negroes was made to Mrs. Elizabeth Goodwyn, the mother of Burwell P., and in 1830, she, by her will, bequeathed them to her grandson, Napoleon B.—she never having had possession of them, but the negroes continued in Burwell Goodwyn's possession up to his death, in 1835.

Sims et al. vs. Goodwyn et al.

There was no administration had upon his estate, for he seems to have been very much embarassed and wholly insolvent. After the death of Burwell, the negroes continued in the possession of his widow, Mrs. Nancy Goodwyn, who, sometime afterwards, removed with the negroes and her children to Coweta county, Georgia, where that suit was brought, in 1849. Upon these facts, this Court ruled—the question being directly presented—that, "if Burwell P. Goodwyn's money paid for the negroes, Mrs. Elizabeth Goodwyn, not having got possession of the negroes, never could have recovered them from him during her lifetime, neither could she will them after her death so as to enable her legatee to do so." 20 *Geo.* 621. Notwithstanding this ruling, the plaintiff in that action succeeded in a recovery, not on the strength of his title, but in consequence of the admissions of his mother, the defendant in that action. As against her, he is entitled to the possession of the negroes and an account for the hire, so it is adjudicated. But at that stage of the proceeding, and before that judgment is executed, administration is taken out on the estate of Burwell P. Goodwyn by the complainant, who, it seems, is the security on the bail bond, given by Mrs. Goodwyn upon the demand of her son, and, consequently, is liable for this sum of money so recovered. And he files this bill, asking the Courts to enjoin the collection or settlement, alleging, among other things, that, if the negroes should go into the possession of Napoleon in settlement of that judgment, that the property would be run off, or squandered, or seized by his creditors, and new issues, and new litigation would be the consequence; that he, Napoleon, is wholly insolvent and utterly unable to respond to any recovery that might be had against him in this behalf. That, if Nancy Goodwyn be allowed to settle this judgment with this property, it would take all she had to pay it, and she would be unable to respond to a recovery, etc. Upon these facts, we think, the complainant is entitled to the injunction, for by the injunction complainant is fully protected and indemnified against any loss from a change of the property, to which, according to the allegations in the bill, it would be greatly exposed, and for the additional reason that the complainant is entitled to a recovery of the property, and the injunction should be allowed, for the purpose of protecting the defendant, Nancy Good-

wyn, who is also before the Court by this bill, and as much entitled to relief as if she had solicited it; for it would be grossly inequitable and unjust to compel her to pay this judgment and, also, answer to the demand of the complainant for the identical property—for to that demand she is clearly liable—and a Court of Equity ought not to permit her to respond for the same property or cause of action but once.

It is objected to the grant of this injunction by the defendant, Napoleon B., that the demand of complainant is stale. It certainly can not be so as to him; for he never has had the possession of the property, so that the statute of limitations could run as against him. And that is a sufficient reply to that objection.

It is also said that the common law remedy of the complainant is adequate and complete, but it is not so, on account of the insolvency of Napoleon B.; besides, no action can be had against him until he gets the property, and when he does that, it is perfectly possible that the process of the Court could neither reach him or the property. That's the case made in the bill. Nor would any common law remedy, even if Napoleon B. was responsible and solvent, fully meet and protect the rights of all the parties in interest. The complainant might possibly be protected, if Mrs. Nancy Goodwyn could respond to both actions, and a recovery in each; but this she is not able to do, and if she could, it would be inequitable to so compel her.

The injunction must be allowed on complainant giving the bond required by the statute.

## JUDGMENT.

Whereupon, it is considered and adjudged by the Court, that the judgment of the Court below be reversed, upon the ground that the Court erred in refusing to sanction the injunction prayed for in this bill. On condition that complainant gave the bond required by the statute in such case, the injunction should have been granted.